EXHIBIT 4

## Declaration of Chreatha Alston

Pursuant to 28 U.S.C. § 1746, I, Chreatha Alston, hereby declare the following statements to be true and accurate to the best of my knowledge and belief, based on my observations and experiences while employed at Sandhills Community College:

1. My name is Chreatha Alston. I was employed as the Senior Director of Human Resources and Title IX Coordinator at Sandhills Community College ("SCC") in Pinehurst, North Carolina, From December 2021 through October 2024.

2. During my tenure at SCC, I observed and experienced a pattern, custom, and practice of a racially discriminatory and hostile work environment fostered by the actions of SCC administration officials, including President Alexander Stewart, against employees of color. This practice included under-paying, over-scrutinizing, and over-disciplining Black employees in leadership roles. Regarding pay, these practices included:

- Raises being granted to white employees without changes in job duties, while employees of color were assigned additional work without corresponding raises.

- Significant raises for white employees, including four white vice presidents, while the sole Black vice president, Dr. Fallon Brewington, did not receive a raise.

- Disparities in promotion-related raises, with employees of color receiving average raises of less than $5,000, while at least two white employees received approximately $20,000 each in annual raises.

3. I have reviewed the April 17, 2025 letter from Mr. Brower's lawyers addressed to Tina Hlabse, who I know to be outside counsel to SCC. I was interviewed by Mr. Brower's lawyers prior to the date of the letter, and it correctly summarizes the information I provided in response to their questions. I want to note, however, that I provided specific details in relation to the categories identified in that letter, but asked they not be disclosed in fear SCC might retaliate against certain people I identified.

4. I also observed several instances where white employees, including white employees identified in SCC's organizational chart as being at the same level and/or reporting to the same persons as Mr. Brower, who were not disciplined or terminated for inappropriate or illegal actions and behavior. These include:

EXHIBIT 4

- In the spring of 2024, a newly hired Gardens Instructor who identified as white, whom I believe to be named Michael Walker, came to work clearly intoxicated as described by students and his management team. As Senior Director of Human Resources, I can state unequivocally that this was a terminable offense. President Stewart, through Dr. Rebecca Roush, President Stewart was made aware of the situation and the nature of the offense, yet he issued no disciplinary measure at all, much less terminated this high-level employee.

- Wendy Kauffman, who is white and employed as the Dean of Academic Support, was discovered to be falsifying and taking unapproved leave in early 2024. SCC's review of her records concluded she had falsely and intentionally reported weeks of time as work hours. These findings were discovered by Vice President Rebecca Roush, yet no disciplinary actions was taken against her.

- Elizabeth Thomas (Libba), who is white and served as CFO, openly admitted to President Stewart and me that she had misappropriated earmarked state retention funds and subsequently falsified annual reporting to the System Office. President Stewart again took no disciplinary action. More specifically, in July 2023, in an introductory meeting with me, Libba and Dr. Stewart, Libba stated during the fiscal conversation " I will tell you right now, I lied about on the annual (state) reporting about retention funding." She admitted that she falsely reported that the earmarked retention funds were not used for retention, but used to keep the college afloat. Over the course of the next 8 months, Libba repeatedly was not able to provide financial data requests to Dr. Stewart. Dr. Stewart and I agreed that she was deficient in her role as the CFO, however, he never took disciplinary action against her. On multiple occasions, Libba was unable to sufficiently respond to simple budget data requests from leadership or the Dr. Stewart regarding accounting and explanation of funds. Dr. Stewart asked for Libba and I to work together to provide financial data/spreadsheets and she was unable to fulfill the request. President Stewart again no disciplinary action at any time regarding Libba's inability to properly perform the duties of her job. While Libba ultimately separated from SCC, she was later hired back by SCC, and as an independent contractor and at higher pay.

5. For the record, Libba noticed her intent to resign a few months before me. Libba was granted three months of pay/severance. By contrast, I consistently demonstrated diligence and effectiveness in my role, with no disciplinary actions or negative annual reviews. However, during my resignation process, I was instructed to resign immediately and have been treated unfavorably following my resignation.

EXHIBIT 4

This disparate treatment is particularly concerning given my status as a member of three protected classes under Title VII.

6. Ultimately, in my time at SCC I witnessed decisions made by SCC leadership including President Stewart that I believe reflect unfair hiring practices, misuse of taxpayer funds, and discriminatory practices in supervision, oversight, promotions, assignments, transfers, and salary assignments, resulting in disparate treatment and impact on protected classes of employees.

7. I raised concerns during scheduled one-on-one meetings and with senior leadership, but my concerns were ignored, leading to a harmful and volatile work environment. This ultimately compelled me to resign under duress for my mental well-being.

8. I observed actions that I believe devalued the role of HR, including the appointment of individuals to roles for which they lacked experience, suppression of my ability to comply with federal Title IX regulations, and disregard for the contributions of long-serving employees.

9. I also put SCC on notice of these discriminatory practices and actions by email to senior leadership on August 21, 2024. A true and accurate copy of that email is attached hereto as Exhibit A. In response, SCC issued a blanket denial, and offered to pay me in exchange for my silence. I refused.

10. I am aware that my public records request was the request for which Mr. Brower was searching for documents in August 2024. Prior to Mr. Brower being put on paid leave (which I understand happened in the closing days of August 2024), Mr. Brower and I had no communication of any kind about my EEOC complaint, my related public records request, or his subsequent search for documents. I am aware of SCC's allegations about Mr. Brower printing off emails, which Mr. Brower has consistently denied in what conversations we have had to date. To the extent Mr. Brower ever collected or read records or information in relation to my public records request, he has never talked to me about it nor have I inquired.

**EXHIBIT 4**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Signed: *Chreatha Alston*

Name: Chreatha Alston

Date: 4/22/2025

**EXHIBIT 4**

**From:** Chreatha Alston <chreatha@gmail.com>
**Sent:** Wednesday, August 21, 2024 12:04 AM
**To:** Alexander Stewart <stewarts@sandhills.edu>
**Subject:** Follow Up to Our Meeting on Monday, October 19th and My Resignation

**Cc:** caddelll@sandhills.edu <caddelll@sandhills.edu>; carpentert@sandhills.edu <carpentert@sandhills.edu>; tim@lkcengineering.com <tim@lkcengineering.com>; probstmillsh@sandhills.edu <probstmillsh@sandhills.edu>; hprobstmills@gmail.com <hprobstmills@gmail.com>; voigtj@sandhills.edu <voigtj@sandhills.edu>
**Subject:** Follow Up to Our Meeting on Monday, October 19th and My Resignation

Dr. Stewart,

In response to our meeting yesterday and your request for me to modify my resignation date and sign a proposed Separation Agreement, I am requesting the following modifications before I sign:

1. Your agreement suggested an immediate resignation date of August 19, 2024. The resignation date will remain October 19, 2024, as I originally tendered to you via email on August 8th. The sentence should be modified to read: "…a sum equivalent to 2 months …as the salary in effect…"
2. Under your proposed separation and payment section, the payment amount should be modified to reflect my full expected salary through my original resignation date of October 19, 2024, including all benefits during that period.
3. Strike out, in its entirety, the 3rd clause entitled: Non-Admission of Liability or Wrongful Conduct.
4. Strike out the 2nd paragraph of the 4th clause entitled "Non-Disclosure of Confidential Information…". All materials in my possession as of August 19, including office keys, credit card and laptop, have been surrendered to HR and/or IT as of August 20, 2024.

Once these changes have been made and communicated to me via email, I will sign the agreement.

The intent of my resignation emailed to you on Thursday, August 8th was to provide ample notice for a smooth transition in my HR role while protecting the institution, students, and employees. My resignation adhered to policy 5.4.2, which I helped develop, requiring a

**EXHIBIT 4**

minimum of 30 days' notice. I am unwilling to sign the document in its current form due to the following reasons:

Rather than you allowing me to quietly leave the institution on terms that were favorable to my HR team and the employees, it is my belief based on the abrupt nature of your actions yesterday that you created a perception among employees that my departure involved wrongdoing or was adversarial, neither of which are true

Considering my resignation is under much more favorable terms than that of Elizabeth Thomas (Libba), former CFO, I should be granted similar consideration and respect during her resignation.

You may recall the meeting last July when Libba admitted to you and me that she lied on annual reporting to the System Office regarding Sandhills' utilization of retention funds. Instead of terminating her, when she admitted it, you allowed her to stay employed as the CFO of the college. Other leaders would most likely consider this type of insubordination to be immediate grounds for termination.

Libba failed to respond to multiple budgetary requests from you, but you allowed her to remain employed until she resigned.

Libba tendered her resignation on or around April 2024 however, she was allowed to continue working until approximately May 15, 2024, but she was paid through June 30, 2024, including benefits.

Not only was she paid. After her payout, you hired her as a consultant in July 2024 because the College could not figure out how to successfully perform the annual close-out, even though at least 3 consultants have been hired after Libba's departure to clean up and correct financial reporting and compliance issues the college is currently grappling with. In contrast, I have been diligent and highly effective in my role, with no disciplinary actions, disagreements, or negative reviews throughout my time at Sandhills. Yet, I have been treated unfavorably following my resignation. This treatment is especially troubling given my status as a member of three protected classes under Title VII.

I quietly watched you authorize raises for several non-minorities even when they acquired no change in job duties while many people of color were given more work but no raises. I quietly watched you give 4 white vice presidents a raise while not giving a raise to the 1 (one) black vice president, Dr. Fallon Brewington.

EXHIBIT 4

I quietly watched as you made excuses not to give the IT department (which has a majority of minorities) retention raises as I suggested and articulated but give Michelle Bauer an approximate $45,000 raise within the past 2 months.

I quietly watched people of color granted promotions receive an average raise of less than $5000, while at least 2 white people were given ~$20,000 each in annual raises within the past 2 months.

I quietly watched you authorize the non-renewal of Dr. Twana McKnight and what I perceive as the disrespect of our dedicated and experienced CIO, Roderick Brower, by some members of the executive team.

I quietly watched what I believe to be the misuse of my taxpayer funds, failure to follow written rules and procedures, unfair hiring practices, discriminatory practices in supervision, discriminatory practices in oversight, discriminatory practices in promotions/assignments/transfers, preferential treatment for white employees,  and discriminatory practices in salary assignments leading to disparate treatment and impact on protected classes of employees.

I quietly watched, under your leadership, in my expressed opinion, the devaluing of the role of HR, allowing some members of the Senior team to openly disrespect and disregard the knowledge of my team while appointing Dr. Julie Voigt and Dr. David Farmer to roles they have no experience in, in my opinion, putting the institution at risk.

I quietly watched Dr. Julie Voigt suppress my ability as a trained Title IX coordinator to comply with federal regulations that were effective August 1, 2024.

I quietly watched Dr. Dempsey be disregarded after giving 33 years of his life to this College, but I will not allow you or anyone on your senior leadership to disregard my hard work and dedication to Sandhills or my 15 years of hard work and dedication to the NC Community College System.

I repeatedly raised my concerns during our scheduled one-on-one meetings, but they were ignored, leaving me with no choice but to resign under duress for my mental well-being. I met with and informed members of senior leadership multiple times to address perceived issues, but I faced resistance, accusations, and blatant disregard. This created a harmful, volatile work environment and ultimately led to my resignation on August 4th.

**EXHIBIT 4**

I look forward to receiving your written response to my request for the modification of the agreement. If you fail to respond via writing within 48 hours, I will assume you have fired me, and I will proceed accordingly.

I will send under a separate cover a public record request pursuant to NC General Statutes 132.

Chreatha Alston

CC: Larry Caddell
Tim Carpenter
 Helen Probst-Mills
Julie Voigt

**Exhibit A**