**EXHIBIT 7**



**Sandhills**
COMMUNITY COLLEGE

OFFICE OF THE PRESIDENT

November 11, 2024

Mr. Roderick Brower
151 Hawthorne Trail
West End, NC 27376

RE:     Written Notice of Dismissal

Dear Mr. Brower,

This is a written notice of dismissal from your position as Chief Information Officer with Sandhills Community College ("SCC" or "College") pursuant to Procedure 5.4.5 Section III(B).

**Recommended Disciplinary Action:**

After an investigation, dismissal from your position as Chief Information Officer with Sandhills Community College was recommended by Dr. Farmer based on your improperly accessing and entering the President's office and computer while he was not present and accessing information, including privileged information, without authorization or permission.  On November 1, 2024, Dr. Farmer and I met with you at 9:00 am in my office to provide you with the written notice of charges and allow you an opportunity to respond.

As of November 1, 2024, a final decision had not been made regarding your employment. The purpose of the meeting on November 1, 2024 was to ensure that a decision was not based on misinformation and to give you an opportunity to respond to the recommended disciplinary action.  During the meeting, Dr. Farmer reviewed the specific reasons for the recommendation of dismissal with you. As more fully detailed below, you were allowed the opportunity to respond and to offer any additional information that you felt should be considered prior to a final decision being made. Present with you during the meeting was your legal counsel, Rachel VanCamp.

**Basis for Dismissal:**

This Dismissal is based on the following timeline of events and investigation:

**August 21, 2024**

- On this date, the College received a large public records request from Ms. C. Alston.

**EXHIBIT 7**

- Dr. Farmer and I met with you and requested that you help formulate a plan with regard to how to best and most efficiently respond to the public records request given its breadth. We then said that we would meet again after you formulated a plan.

**August 22, 2024**

- On the afternoon of August 22, 2024, you called Teresa Sheets, my Executive Assistant, to see if I was in my office, and Ms. Sheets informed you that I was away from my office.

- Shortly thereafter, you came down to my office and again asked Ms. Sheets if I was in and if I would return.

- You told Ms. Sheets that you were working on a project to gather information for me, that you were unable to do the research remotely and that you needed to use the President's computer.

- You asked Ms. Sheets if she had access to my login. Knowing I was not in, you then walked into my dark office and saw that I was still logged into my computer.

- Dr. Farmer and I returned to my office to find you on my computer without my prior knowledge or permission.

- When we questioned you, on the afternoon of August 22, 2024, about why you were in my office, you stated the following:
  - That you were working on filling the public records request and had created a folder in Outlook email titled "Records Request" in which you had copied and pasted emails relevant to the search terms in C. Alston's public records request.
  - You agreed that neither Dr. Farmer nor I had instructed you to do this.
  - You further agreed that your only instruction was to formulate a plan to respond to the public records request.
  - During that discussion you stated that you had not read any emails.
  - At that time, I made it clear that we could not operate in this fashion and, at a minimum, your actions on August 22, 2024 would be documented.

- Later on August 22, 2024, Dr. Farmer and I discovered that while you had been on my computer and working in my Outlook email program, you also logged into your own email account on my computer through the web browser. You did not disclose this during our earlier discussion in my office.

- After you left my office, Dr. Farmer and I also learned that you had printed some emails from my computer to the printer in Ms. Sheets' office. You then retrieved those emails from the printer, reviewed them, tore them in half and then asked Ms. Sheets to shred them. Ms. Sheets preserved those printed emails, one of which was an email between

2

**EXHIBIT 7**

legal counsel and me. During our discussion, you did not disclose that you printed any emails while on my computer on August 22, 2024. Rather, you specifically denied reading any of the emails.

**August 23, 2024**

- Dr. Farmer and I met with you in my office on the morning of August 23, 2024.

- At that time, we again asked you for an explanation as to why you were in my office and on my computer without my permission or knowledge.

- You again repeated what you had shared with us the prior afternoon of August 22, 2024.

- We then asked you to provide us with a written statement regarding this incident. Your written statement included the following:
  o "Wanted to pull Data for Dr. Stewart to Look over during weekend."
  o "PC was Not Locked, Email was open I Performed Advanced Search based on criteria in Records Request."
  o "Put approx. 50 Emails in folder Named 'Records Request' in Dr. Stewart's Email box."
  o "No Email were read or opened."
  o "Was hoping to test queries for sound results before doing others. Dr. Stewart was firt (sp) two Requests so I started with his Email box."
  o Queries Need to be done within user's mailbox for Complete Results."

- On August 23, 2024, you again failed to disclose either in discussion or in your written statement that you had opened and logged into your own email account while on my computer.

- You again failed to disclose either in discussion or in your written statement that you printed or read any emails, much less privileged emails. Rather, you again specifically denied opening or reading any of the emails.

- After providing your written statement, you were put on paid administrative leave so that we could further investigate this matter.

**Further Investigation**

Subsequent to you being put on paid administrative leave, Dr. Farmer requested Jonathan McLeod, Director of Infrastructure, to assist with the public records request by Ms. Alston. Mr. McLeod has been able to pull records and emails responsive to the public records request from his own computer without having to access my computer or any other individuals' computers and without having to go to their offices. We have confirmed that these queries do not need to be done on each individual user's computer for complete results. As Chief Information Officer you

3

**EXHIBIT 7**

were or should have been well aware of this. There was no legitimate reason for you to be on my computer to pull these records or for you to have printed any of these emails (including the email I had with legal counsel).

**November 1, 2024**

- Dr. Farmer and I met with you the morning of November 1, 2024 to provide you with the written notice of charges and allow you an opportunity to respond.

- During this meeting Dr. Farmer read through the entire written notice of charges with you and then you were given as much time as you needed to review the written notice of charges, consult with your attorney and provide any additional information in response prior to us making any decision regarding your employment.

- After being provided the written notice of charges and consulting with your attorney, you provided the following additional information and explanation with regard to the charges:
    - With regard to being asked to formulate a plan to respond to the public records request on August 21, 2024, you indicated that you left that meeting thinking that you needed to start work on the public records request. You further indicated that when you left the August 21 meeting you thought the public records request was a priority and that it was time sensitive. You said you walked away trying to figure out how to get it done.
        - However, on August 22 and August 23, 2024, you agreed with Dr. Farmer and me that you were simply asked to come up with a plan as to how we could timely and efficiently respond to the public records request. You were also aware that during the August 21 meeting, we did not give you a deadline for completing the plan or the actual searches. There was nothing that had to be completed that Thursday such that you should have felt like you could not have first talked with me before accessing my office and my computer.
        - Mr. McLeod who was requested to assist with the public records request after you were put on leave was able to perform the searches needed remotely and did not have to log into anyone else's computer. Mr. McLeod indicated that at first, he thought he might have to go on people's computers to pull the records; however, prior to doing that, he looked into programs that the College had to see if these searches could be done remotely. After he researched and developed a plan, he then discussed that with Dr. Farmer. This is what you should have done.
        - Even if you thought that you needed to access my computer and my email account on my computer to pull records for the public records request, there is no justification for not discussing this with me first and asking me for access to my computer.
    - In response to the information in the written notice of charges that you had logged into your own email while on my computer and failed to tell us on either August

4

## EXHIBIT 7

22 or 23, you stated multiple times that you did not remember logging into your own email while on my computer.

- You further stated that you do not know why you would have logged into your email.
- You did speculate that if you had logged into your own email, not that you remembered doing that, but if you had, it may have been to see what type of query you should do in your inbox.

o With regard to the emails that you printed while on my computer, you stated that you did not remember printing out any emails, nor did you remember asking Ms. Sheets to shred them.

- You did ask what proof or information we had to show that you did print out emails.
- In response, we shared that only two computers had access and the ability to print to Ms. Sheets' printer – hers and mine. While you were in my office and on my computer, these emails were printed on the printer in Ms. Sheet's office and Ms. Sheets did not print them. Ms. Sheets observed you come out of my office, take the emails off the printer, read them, mumble under your breath, tear them in half and then hand them to her and ask her to put them in her shred bin. Ms. Sheets saved these emails, which were torn in half and preserved them in a folder. On the evening of August 22, Ms. Sheets made me aware of the folder containing the emails you printed.
- In response you admitted that nothing with the public records request would have required you to print out any emails.
- You offered no explanation as to why you printed out the emails, including one with legal counsel.

o You stated that you operated under the same procedure as you did under the previous President, Dr. Dempsey.

o You indicated that you now understood that things should have been handled differently.

- After you indicated that you had nothing further to add, share or change regarding your actions on August 22, 2024, I summarized the information you had provided to us (as shared above) and again asked you if there was any additional information that you would like to share or for us to consider.

o You indicated that you would like for us to consider your 18-19 years of service to the College and your HR history.

**Additional Investigation**

Following the November 1, 2024 meeting, we did some additional investigation and follow-up with regard to the information you shared with us.

- Ms. Sheets again confirmed that while you were in my office on August 22, 2024, you had printed out emails on the printer that is in her office, came out of my office and took

5

**EXHIBIT 7**

the emails off the printer, read through them, muttered under your breath, tore them in half, handed them to her and then asked her to shred them.

- Mr. McLeod indicated that you and he did discuss the public records request on one occasion prior to the afternoon of August 22. Mr. McLeod indicated that at first he thought you or he might have to go on people's computers to pull the records; however, after you were placed on administrative leave and we requested his help with the public records request, he looked into programs that the College had to see if these searches could be done remotely. After he researched and developed a plan wherein he could use Microsoft Purview to do the searches remotely, he then discussed that with Dr. Farmer. This is what you were requested to do.

- We looked at the Microsoft Purview log which shows that you had previously used Microsoft Purview to search an email account in June 2024. Therefore, prior to August 22, 2024, you were aware that emails could be searched remotely using Microsoft Purview because you had used it before.

- We also considered your statement that this was the same procedure you used with Dr. Dempsey. As you know, Dr. Dempsey has not been President since 2022, and I have been President for over one year and this has never been our practice or norm. There was no reason for you to believe that you had permission to access my computer without specifically discussing with me first.

- We did confirm that you put some emails in a folder in my email account on that date as you stated. However, we also noted that the three emails that were printed were not emails from that folder but rather were emails that were in my inbox and not in any chronological order.

- In case your responses on November 1 were not clear, your attorney followed up with our attorney on November 5, 2024 to share that you were adamant that you never printed anything from the President's computer and you denied ever ripping any documents or asking Ms. Sheets to shred anything.

### Conclusions

As set forth in detail above, your actions on August 22, 2024 and thereafter are inconsistent with the Sandhills Community College Core Value of Integrity because you purposely and intentionally accessed the President's office and email without any clear directive or permission to do so. Trust and integrity are essential for the position of Chief Information Officer for the College. This position has broad access to confidential, privileged and sensitive information. In order to effectively fulfill the responsibilities of this position, the College has to be able to trust in your ability to not only perform the daily activities of this position, but also to exercise the good judgment and integrity needed of someone in this position. Your actions and subsequent

**EXHIBIT 7**

lack of explanation have caused me to lose trust in you and thus, your ability to effectively do your job. This constitutes gross misconduct and warrants dismissal from your position.

Sincerely,

Alexander M. Stewart
President, Sandhills Community College

cc:     DJ Farmer
        Executive Vice President, Sandhills Community College

        Personnel file

7