IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
No.1:25-cv-00310-TDS-JLW

| | | |
|---|---|---|
| RODERICK BROWER, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE TRUSTEES OF SANDHILLS | ) | **MEMORANDUM IN SUPPORT** |
| COMMUNITY COLLEGE; ALEXANDER M. | ) | **OF DEFENDANTS' MOTION FOR** |
| STEWART; in his individual capacity and | ) | **JUDGMENT ON THE** |
| official capacity as President of Sandhills | ) | **PLEADINGS** |
| Community College; and DAVID S. FARMER | ) | |
| JR.; in his individual capacity and official | ) | |
| capacity as Executive Vice President of | ) | |
| Sandhills Community College, | ) | |
| | ) | |
| Defendants. | ) | |

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and Local Rules

7.2 and 7.3, Defendants hereby submit this Memorandum in Support of Defendants'

Motion for Judgment on the Pleadings, on the grounds that (i) Plaintiff failed to exhaust

his administrative remedies with respect to his claims for hostile work environment and

retaliation under Title VII, and (ii) Plaintiff failed to allege facts to state a claim against

any of the defendants.

## <u>NATURE OF THE CASE</u>

Plaintiff filed his Complaint against Defendants on April 23, 2025. (Dkt No. 1)

On July 21, 2025, Defendants timely filed their Answer, which included defenses under

Rule 12(b)(1) and 12(b)(6), among others.  (Dkt No. 16)  Defendants filed a Rule 12(c)

motion on January 5, 2026 (Dkt No.23), supported by this Memorandum.

1

## STATEMENT OF FACTS

For the limited purpose of Defendants' Motion for Judgment on the Pleadings, the following alleged facts are taken from the Complaint and its attachments and Defendants' Answer and its attachments.

Plaintiff, a "56-year-old African American man," was employed as "Chief Information Officer ("CIO")" at Sandhills Community College ("SCC"). (Dkt No. 1, Compl. ¶¶ 1, 22) While Plaintiff was employed with SCC on two separate occasions, he "had no prior warnings or disciplinary actions of any kind in eighteen years of employment with SCC" and "[d]uring his tenure at SCC, he regularly received praise and accolades from his supervisors and superiors." (*Id.*, Compl. ¶¶ 58-59, 61-63, 65)

"On August 20, 2024, Defendant Stewart, Defendant Farmer, and Mr. Brower received an extensive public records request from Chreatha Alston, an African American woman who had served as SCC's Senior Director of Human Resources and Title IX Coordinator from December 2021 to August 2024."[1] (*Id.,* Compl. ¶ 106) On August 21, 2024, Plaintiff met with President Stewart and Dr. Farmer, where they discussed "the necessary 'queries' to pull emails from applicable email accounts that were responsive to the public records request." (*Id.,* Compl. ¶¶ 109-110) Plaintiff informed President Stewart and Dr. Farmer "that he would be accessing their email accounts in order to run the necessary queries to pull emails that were responsive to the public records request." (*Id.)* "At the conclusion of the August 21, 2024 meeting, [Plaintiff] believed that he was

---

[1] Ms. Alston resigned from her employment with SCC. (Dkt No. 1-4, ¶5)

2

'good to go' to begin working on collecting responsive emails for the public records request." (*Id.,* Compl. ¶ 113)

"The following day, August 22 [Plaintiff] began his efforts, which included accessing the SCC computer in [President] Stewart's office." (*Id.,* Compl. ¶ 10) President Stewart "was not present" when Plaintiff went to President Stewart's office and accessed President Stewart's computer. (*Id.,* Compl. ¶ 122) "Before [Plaintiff] finished, President Stewart entered his office…. [President] Stewart "expressed surprise and anger that [Plaintiff] was in his office and working at his computer. [President] Stewart asked [Plaintiff] what he was doing there." (*Id.,* Compl. ¶ 129) Plaintiff "explained that he had begun working on the response to the public records request as they had discussed the previous day, and **needed to access [President] Stewart's office and computer in order to do so**." (*Id.,* Compl. ¶ 130) (emphasis added) President Stewart told Plaintiff "that he had not given [Plaintiff] permission to access his office and computer without him present, and stated that he would 'need to look into' this incident and document what had happened." (*Id.,* Compl. ¶ 131)

On August 23, 2024, Teresa Sheets, President Stewart's executive assistant, provided Defendants with a written statement, in which she reported that while Plaintiff was in President Stewart's office on August 22, Plaintiff reviewed and printed emails of a "sensitive nature" from President Stewart's computer. (Dkt No. 16-2) On that same day (August 23, 2024), President Stewart and Dr. Farmer met with Plaintiff to discuss Plaintiff's conduct. (Dkt No. 1, Compl. ¶ 134) During this meeting, Plaintiff provided Defendants with a written statement in which he claimed that his reason for being in

President Stewart's office and on his computer was because "**Que[]ries Need to be done within user's mailbox for Complete Results.**" (Dkt 16-1) (emphasis added)  Plaintiff also denied that any "emails were read or opened" by him while he was on President Stewart's computer.  *Id.*  President Stewart and Dr. Farmer "then informed [Plaintiff] that they were placing him on administrative leave while they conducted a further investigation into the incident."  (Dkt No. 1, Compl. ¶ 138)

On August 28, 2024, while on administrative leave, Plaintiff submitted an "Inquiry Information" form to the EEOC against SCC.  (Dkt No. 1, Compl. ¶ 144 ; Dkt No. 1-1, p. 2)  "That same day, [Plaintiff] informed Defendants in writing that he had submitted an EEOC inquiry alleging racial discrimination and retaliation in violation of Title VII against SCC."  (Dkt No. 1, Compl. ¶ 145).

On November 1, 2024, Dr. Farmer informed Plaintiff that he was recommending his discharge "'based on [Plaintiff] improperly entering the President's office and accessing his computer while he was not present and accessing information, including privileged information, without authorization or permission.'"  (Dkt No. 1, Compl. ¶¶ 147-148, 151; Dkt No. 1-5)  At that time, Plaintiff expressly "denied printing, reading, or tearing any emails" and "noted that **there would be absolutely no reason for him to do so, when he could access any emails from his own computer**."[2]  (*Id.*, Compl. ¶ 158)

---

[2] Plaintiff's statement to President Stewart and Dr. Farmer that he had to be <u>on</u> President Stewart's computer in President Stewart's office in order to do the searches is entirely inconsistent with his statement that there would be "absolutely no reason" for him to read or print any of President Stewart's emails on that day because he could "access any emails from his own computer."

4

(emphasis added)  On November 9, 2024, Plaintiff submitted a written response to the November 1, 2024 Notice of Charges letter in which he "again denied printing, reading, or tearing any emails."  (*Id.*, Compl. ¶¶ 167, 169; Dkt No. 1-6)  SCC terminated Plaintiff's employment on November 11, 2024.  (Dkt No. 1, Compl. ¶ 170; Dkt No. 1-7)

On January 7, 2025, Plaintiff filed a Charge of Discrimination with the EEOC, alleging only age and race discrimination and reporting that the earliest date of alleged discrimination was August 23, 2024, and that the latest date of alleged discrimination was November 11, 2024.  (Dkt No. 1-2, p. 1)  Other than conclusory allegations, Plaintiff focuses exclusively on the August 22, 2024 events that led to his termination.  *Id.*  In his Charge, however, Plaintiff directly contradicts what he earlier told President Stewart and Dr. Farmer (verbally and in writing), as he declares under penalty of perjury that:

> On or around August 22, 2024, I contacted the president's secretary and informed her that I would need access to the president's office to obtain the information needed from his computer.  **This could have been done from my own computer; however, I wanted to complete this directly from the computers needed so that there was complete transparency and to reduce the feeling of privacy invasion**.[3]

(Dkt No. 1-2, p. 1) (emphasis added)  Shortly thereafter, on January 23, 2025, the EEOC issued its Determination and Notice of Rights to Plaintiff.  (Dkt No. 1-3, p. 1)

---

[3] This is particularly ironic given that President Stewart was gone and did not know that Plaintiff was in his office at that time.

5

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A Rule 12(c) motion for judgment on the pleadings is analyzed under the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002); *Medlin v. City of Mount Holly*, 2021 WL 2785473 at *1 (W.D.N.C. May 26, 2021) (citations omitted). "The test applicable for judgment on the pleadings is whether or not, when viewed in the light most favorable to the party against whom the motion is made, genuine issues of material fact remain or whether the case can be decided as a matter of law." *Smith v. McDonald*, 562 F. Supp. 829, 842 (M.D.N.C. 1983), aff'd, 737 F.2d 427 (4th Cir. 1984) aff'd, 472 U.S. 479, 105 S. Ct. 2787, 86 L.Ed.2d 384 (1985).

## ARGUMENT AND CITATIONS OF AUTHORITY

A motion to dismiss for failure to exhaust administrative remedies and to file suit within the deadlines imposed by Title VII are analyzed under Rule 12(b)(6). *See Fort Bend Cty. v. Davis*, 587 U.S. 541, 551-52, 139 S.Ct. 1843, 1851–52, 204 L.Ed.2d 116 (2019); *EEOC v. 1618 Concepts, Inc.*, 432 F. Supp. 3d 595, 601 (M.D.N.C. 2020); *Abadi v. Mecklenburg Cty. Govt.*, 2019 WL 2546732, at *3 (W.D.N.C. June 20, 2019) (noting that Title VII's requirement that a plaintiff must exhaust all administrative remedies is no longer a jurisdictional issue under *Davis, but* that the substance of the requirement itself remains unchanged).

6

Title VII requires plaintiffs to "exhaust [their] administrative remedies by filing a charge with the EEOC before pursuing a suit in federal court." *Sydnor v. Fairfax Cnty., Va.*, 681 F.3d 591, 593 (4th Cir. 2012). A plaintiff "fails to exhaust his administrative remedies where … his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005). "Claims that fall outside the scope of the EEOC Charge are procedurally barred." *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995) (internal citations omitted).

The jurisdictional prerequisites for a Title VII claim include: "(1) filing a Charge of Discrimination with the E.E.O.C. within 180 days of the occurrence of the alleged discrimination; (2) receiving statutory Notice of Right to Sue; and (3) filing a lawsuit based on the Charge of Discrimination within 90 days of receiving the notice." *Rorie v. Guilford County Schools*, 2007 WL 1385655, at *2 (M.D.N.C. May 8, 2007) (citing 42 U.S.C. 2000e-5(e), (f)(1)). "The allegations contained in an administrative charge generally limit the scope of any subsequent judicial complaint." *Hernanadez v. Mobile Link (N.C.) LLC*, 2021 WL 2056979, at *3 (E.D.N.C. May 21, 2021) (internal citations omitted). Plaintiff filed a Charge with the EEOC, alleging age and race discrimination, but he failed to exhaust his administrative remedies with respect to his Title VII claims for hostile work environment and retaliation.

Additionally, a motion to dismiss should be granted if, assuming the facts in the complaint are true, a plaintiff has not alleged facts that would entitle him to relief. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). To survive a motion to

7

dismiss, a complaint must "set forth facts sufficient to allege each element of his claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir.), *cert. denied*, 540 U.S. 940 (2003). "A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-165 , 167 L.Ed.2d 929 (2007) (internal citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* When "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) (internal quotations omitted). Here, Plaintiff's Complaint does not contain factual allegations sufficient to state any claim against any of the Defendants, and his Complaint should be dismissed in its entirety.

I. **Plaintiff Failed to Exhaust His Administrative Remedies for His Title VII Claims of Retaliation and Hostile Work Environment.**

Plaintiff's EEOC Charge shows that Plaintiff alleged only age and race discrimination and thus, he failed to exhaust his administrative remedies for his claims for retaliation and hostile work environment. (Dkt No. 1-2) Our courts have recognized that:

> District courts "are not at liberty to read into administrative charges allegations they do not contain. Instead, persons alleging discrimination have a different form of recourse if they determine that their initial charge does not read as they intended: they may ... file an amended charge with the EEOC." *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 408 (4th Cir. 2013). A Title VII claim is subject to dismissal "if the EEOC charge

8

alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex." *Equal Emp. Opportunity Comm'n v. 1618 Concepts, Inc.*, 432 F. Supp. 3d 595, 601-02 (quoting *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009), *abrogated on other grounds by Fort Bend*, 139 S. Ct. 1843, 204 L. Ed. 2d 116); *see also Chacko*, 429 F.3d at 509 (same). A panel of the Fourth Circuit has upheld the dismissal of race-based claims for a plaintiff's failure to exhaust when she selected only "national origin" as a basis for the alleged discrimination on her EEOC charge. *See Nnadozie v. Genesis Healthcare Corp.*, 730 F. App'x 151, 163 (4th Cir. 2018) (unpublished).

*Hernandez v. Mobile Link (N.C.) LLC*, 2021 WL 2056979, at *3 (E.D.N.C. May 21, 2021). It is only "those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint [that] may be maintained in a subsequent Title VII lawsuit." *Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 963 (4th Cir. 1996) (internal citations omitted).

In *Johnson v. Portfolio Recovery Associates, LLC*, the court found that the plaintiff was precluded from pursuing a claim for retaliation, where he did not explicitly include retaliation in his EEOC charge and could not show that his retaliation claim could be fairly read as being related to or expected to follow from the administrative investigation of his race discrimination claim or any other allegations in the EEOC charge. *See Johnson v. Portfolio Recovery Associates, LLC*, 682 F. Supp. 2d 560 (E.D.Va. 2009). The Court noted that the *Johnson* case was similar to other cases in which "the plaintiff did not allege retaliation at the time he filed his EEOC charge for race discrimination even though the alleged retaliation discrimination would have been known to him at the time he filed the charge." *Id.* at 574 (*citing Steward v. Gwaltney of Smithfield, Ltd.* 954 F. Supp. 1118, 1120, 1122-23 (E.D.Va. 1996)). In its analysis, the Court explained:

9

[] Plaintiff's race discrimination and retaliation claims may be similar in their animus, but Plaintiff's race discrimination claim would not reasonably lead the EEOC to investigate retaliation discrimination based on the EEOC charge filed by Plaintiff when Plaintiff never alleged retaliation or described any actions of protected activity taken by him that could cause Defendant to retaliate against him. Plaintiff did not allege any type of protected activity which could have been reasonably related to his retaliation claim and might have led the EEOC to investigate such potential retaliation.

*Id.* at 577. Therefore, the plaintiff "failed to exhaust administrative remedies available for resolution of his Title VII retaliation claim," and such claim was dismissed for lack of subject matter jurisdiction. *Id.* at 577; *see also Coles v. Carilion,* 894 F. Supp. 2d 783, 793 (W.D.Va. 2012) ("Because the text of the charge expressly limited the retaliation claim to the basis of disability, [the plaintiff] clearly failed to exhaust his administrative remedies with respect to the race-based retaliation claim in the complaint"), *citing Lucas v. Henrico Cnty. Sch. Bd.,* 822 F. Supp. 2d 589, 601–02 (E.D.Va. 2011) ("dismissing a claim in the complaint for gender-based retaliation when the EEOC charge contained a claim only for race-based retaliation").

Here, although Plaintiff filed his Charge almost 5 months after being placed on paid administrative leave and almost 2 months after his termination, Plaintiff asserts only discrimination based upon "age" and "race." He failed to allege retaliation or hostile work environment, based upon race or otherwise. Indeed, reviewing the text of the Charge, Plaintiff does not use the words "hostile," "harassment," or "retaliation." Nor does he allege that he engaged in any protected activity or that he was subjected to any conduct that was severe or pervasive. Claims for retaliation and hostile work

10

environment cannot be fairly read as being related to or expected to follow from the administrative investigation of the allegations in Plaintiff's charge. This is especially true given that (1) he identifies the earliest date of alleged discrimination as August 23, 2024, the date he was placed on administrative leave, (2) he fails to identify any alleged protected activity or any severe or pervasive conduct, and (4) his Charge was dismissed within a couple of weeks after being filed.

In support of his Title VII retaliation claim, Plaintiff now alleges that he engaged in protected activity on or after August 28, 2024 when he filed an EEOC inquiry, that Defendants were aware of Plaintiff's protected activity, and that 2.5 months later Defendants terminated his employment on November 11, 2024. (Dkt No. 1, Compl. ¶¶ 222-224) However, when Plaintiff later filed his Charge with the EEOC on January 7, 2025, Plaintiff failed to allege or even mention retaliation, although he could have done so. (Dkt No. 1-2) Thus, Plaintiff is not excused from the requirement to identify and exhaust his retaliation claim with the EEOC. *See Cumberlander v. KCL Site Servs., LLC,* Civil Action No. 3:09CV25-V, 2010 WL 4818099, at *3 (W.D.N.C. Nov. 19, 2010).

Of note, Plaintiff appears to now recognize the significance of his failure to assert either retaliation or hostile work environment claims in his Charge, and thus, he tries to reference an "Inquiry Information form" that he contends he submitted to the EEOC on August 28, 2024. (Dkt No. 1, Compl. ¶ 49; Dkt No. 1-1) Regardless of what Plaintiff may have earlier asserted in his Inquiry Information form, he cannot rely on this form as it predates his Charge, which was filed 5 months later and which articulated the claims he

11

chose to pursue.  Further, the Inquiry Information form was never provided to SCC.  (Dkt No. 16, Answer ¶ 49).

Even if it was considered part of the Charge, the Inquiry Information form does not save Plaintiff's retaliation claim under Title VII.  While Plaintiff generally uses the word "retaliation" in the Inquiry Information form, he does not assert that he engaged in protected activity based upon his race prior to submitting that form to the EEOC.  To the contrary, Plaintiff alleges that he was "targeted due to [his] friendship with Chreatha Alston" and "singled out and placed on administrative leave because [he] was named in the public records request [submitted by Ms. Alston][4] and the fact that Libba Thomas [former college CFO] named [him] as one of the reasons she was resigning."  (Dkt No. 1-1)  Moreover, because the alleged retaliatory conduct identified in the Complaint is completely different than that identified in his Inquiry Information form, Plaintiff is precluded from pursuing such claims as they exceed the scope of what was presented to the EEOC.  *See Evans v. Techs. Applications & Serv. Co*., 80 F.3d 954, 962-63 (4th Cir. 1996).  Consequently, Plaintiff failed to exhaust his administrative remedies and his Second and Third Causes of Action should be dismissed.

---

[4] Given he was the Chief Information Officer, being copied on an email from a former employee that contains a public records request to SCC does not constitute Plaintiff engaging in any protected activity.  Indeed, Plaintiff admits that he was tasked by Defendants to assist with the work to respond to that very public records request.

12

## II.    Plaintiff's Complaint Fails to State A Claim for Which Relief May Be Granted.

In addition to failing to exhaust his administrative remedies for Title VII claims of hostile work environment and retaliation, Plaintiff has also failed to allege sufficient actionable facts to make any other claims "plausible" under the standard set forth in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

### A.    Plaintiff's Complaint Fails to State a Claim of Racial Discrimination.

The elements of a prima facie case of discrimination, absent direct evidence, under Title VII (and §1983 and §1981) are:  (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class.  *See White v. BFI Waste Servs., LLC,* 375 F.3d 288, 295 (4th Cir. 2004); *Swaso v. Onslow Cnty. Bd. of Ed.*, 698 F. App'x 745, 747 (4th Cir. 2017) ("Claims of racial discrimination in employment under §1981 and §1983 are evaluated under the Title VII framework").

In *Coleman v. the Maryland Court of Appeals*, the Fourth Circuit found that the plaintiff, who failed to allege facts sufficient to show he was treated differently than similarly situated employees outside his protected class, had failed to allege a claim for race discrimination.  *See Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190-91 (4th Cir. 2010).  The court noted:

> The complaint further alleges that Coleman "was treated differently as a result of his race than whites" and specifically identifies Broccolina as a white person who was not disciplined despite having "outside business involvements." J.A. 21–22, 25 (emphasis omitted). However, the complaint

13

fails to establish a plausible basis for believing Broccolina and Coleman were actually similarly situated or that race was the true basis for Coleman's termination. The complaint does not even allege that Broccolina's "outside business involvements" were improper, let alone that any impropriety was comparable to the acts Coleman was alleged to have committed. Absent such support, the complaint's allegations of race discrimination do not rise above speculation. Thus, the district court correctly concluded that the complaint failed to state a Title VII race discrimination claim.

*Id.*

Here, like *Coleman*, Plaintiff has failed to allege anything more than conclusory allegations that he was treated differently from white employees, without alleging facts sufficient to show any of these employees were actually similarly situated to him. (Dkt No. 1, Compl. ¶¶ 211, 279) As alleged comparators, Plaintiff identifies:

-   "A newly-hired white Gardens Instructor" who allegedly came to work intoxicated and was not disciplined, although President Stewart was made aware of the offense;

-   A "white Dean of Academic Support" who allegedly falsified her time sheets and was not disciplined, which "her supervising Vice President was made aware of the offense"; and

-   A "white Chief Financial officer" who allegedly "admitted to Defendant Stewart that she had misappropriated earmarked state retention funds and subsequently falsified annual reporting to the System Office" and was not disciplined.

(Dkt No. 1, Compl. ¶¶ 85-86) With these comparisons, Plaintiff appears to suggest that any employee who allegedly engaged in any kind of "bad conduct" (regardless of the nature, their position, or any of the circumstances) and was not likewise terminated is substantially similar. As explained in *Coleman*, such a position has no merit.

Plaintiff has failed to allege facts that would show that any of the employees identified in the Complaint are substantially similar to Plaintiff. To the contrary, based

14

upon the information provided, it is clear that the individuals identified are <u>not</u> substantially similar or even close.  None of them are alleged to:  (1) have served as the Chief Information Officer with access to highly sensitive electronic information of SCC and all its employees, (2) to have improperly accessed President Stewart's office and his computer without his authorization or knowledge, (3) to have been reported by a co-worker for reading and printing confidential and privileged emails from President Stewart's computer, and (4) to have falsely reported to President Stewart and Dr. Farmer that he had to be on President Stewart's computer in his office in order to run the queries necessary for the public records request.  Accordingly, Plaintiff fails to allege a plausible basis for believing that any of Plaintiff's white co-workers were similarly situated or that race was the basis for any of these actions.  Without such, the Complaint's allegations of race discrimination do not rise above conclusion and speculation, and the Complaint fails to state a Title VII or Section 1981 race discrimination claim.  *See Coleman*, 626 F.3d at 191; *see also Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Moreover, based upon the following undisputed facts in the pleadings, Plaintiff has failed to allege sufficient facts to support a claim for race discrimination:

(1) Prior to the incident on August 22, 2024, Plaintiff had a pristine personnel record, regularly received praise and accolades from his supervisors and superiors, and had no warnings or disciplinary actions of any kind during his 18 years of employment with SCC (Dkt No. 1, Compl. ¶¶ 59, 63-65);

(2) After returning and catching Plaintiff in his office, President Stewart "expressed surprise and anger that Mr. Brower was in his office and working at his computer" (*Id.*, Compl. ¶129);

(3) After being caught, Plaintiff falsely reported (verbally and in writing) that his reason for being in President Stewart's office on August 22 was because he had to be on President Stewart's computer in order to run the queries for the public records request (*Id.*, Compl. ¶ 130; Dkt No. 16-1);[5]

(4) Plaintiff was placed on paid administrative leave as of August 23, 2024 so the College could fully investigate Plaintiff's conduct (Dkt No. 1, Compl. ¶ 138);

(5) Although Plaintiff repeatedly denied that he had reviewed or printed any emails while on President Stewart's computer, a co-worker (Ms. Sheets) reported to President Stewart that Plaintiff had printed emails containing "sensitive information" while he was in President Stewart's office (Dkt No, 1, Compl. ¶ 158; Dkt Nos. 16-1 and 16-2); and

(6) SCC found that Plaintiff engaged in gross misconduct and terminated his employment after completing the investigation into the events of August 22 (Dkt No. 1-7, p. 7).

These undisputed facts, along with Plaintiff's failure to identify any similarly situated employees outside his protected class who were treated more favorably, preclude Plaintiff from establishing that he was terminated based upon race. Therefore, Plaintiff's First, Sixth, Seventh, and Eighth Causes of Action should be dismissed. *See Stunzenas v. Lincoln Nat'l Corp.*, No. 1:21CV430, 2022 WL 17414975, at *10 (M.D.N.C. Dec. 5, 2022) (a claim for wrongful discharge in violation of public policy rises and falls with its counterpart under Title VII).

---

[5] Given his sworn statement in his EEOC Charge, acknowledging that he did not need to be on President Stewart's computer in order to conduct the queries for the public records request and his allegation in Paragraph 158 of his Complaint, Plaintiff cannot dispute that he provided false information to President Stewart and Dr. Farmer during the investigation (including in his August 23, 2024 handwritten statement attached to the Complaint). *See Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984) *superseded by statute on other grounds as stated in Blackwell v. City of Concord,* No. 1:11CV328, 2013 WL 395107, at *3 n. 3 (M.D.N.C. Jan. 31, 2013) ("A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the [witness's] testimony is correct").

16

**B.**   **Plaintiff's Complaint Fails to State a Claim of Hostile Work Environment.**

 To state a claim for hostile work environment, Plaintiff must allege sufficient facts to show that his workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." *See McCarty v. City of Alexandria*, 2025 WL 1899987 at *3, *quoting Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation and internal quotation marks omitted). "Rude or insensitive treatment cannot sustain a hostile work environment claim." *Benjamin v. Sparks*, 173 F. Supp. 3d 272, 286 (EDNC 2016).

In the Complaint, Plaintiff alleges in a very conclusory fashion that "Throughout the course of Plaintiff's employment, Plaintiff was subjected to unwelcome conduct by supervisors, managers, and/or coworkers, including but not limited to hyper-scrutinization, disrespect, lack of trust, pay disparities, discipline disparities, and the mistreatment and coerced resignation of colleagues and coworkers[6] based upon race." (Dkt No. 1, Compl. ¶¶ 79, 236, 250)  Plaintiff fails to identify any person who actually engaged in any such wrongdoing, other than to conclusory state that it was "supervisors, managers, and/or co-workers."  *See Skipper v. Giant Food Inc.*, 68 Fed. App'x. 393, 399 (4th Cir. 2003) ("[A] plaintiff pressing a hostile work environment claim must substantiate his claim with reasonable specifics about the alleged incidents that underlie

---

[6] Of note, Plaintiff does not contend that <u>he</u> was coerced to resign, as he was terminated for his gross misconduct occurring August 22, 2024 and thereafter.

17

the claim."); *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761 (4th Cir. 2003) ("The words 'hostile work environment' are not talismanic, for they are but a legal conclusion; it is the alleged facts supporting those words, construed liberally, which are the proper focus at the motion to dismiss stage").

Plaintiff does not allege any conduct that our courts recognize as severe or pervasive. Instead, Plaintiff makes conclusory allegations that at some unidentified time, some unidentified person(s) subjected him to "hyper-scrutinization, disrespect, lack of trust, pay disparities, discipline disparities,"[7] which is wholly insufficient to state a claim for hostile work environment. *See, e.g., Buchhagen v. ICF Int'l, Inc.*, 545 Fed. Appx. 217, 219 (4th Cir. 2013) (stating that allegations of a supervisor mockingly yelling at the plaintiff in a meeting, "yelling and pounding her hands on her desk during another meeting," "repeatedly harping on a mistake" by the plaintiff, "making snide comments" to the plaintiff, "playing favorites with employees and pitting employees against each other," and "unfairly scrutinizing and criticizing" plaintiff's use of leave and lack of compliance with directives fall "far short of being severe or pervasive enough to establish an abusive environment" (internal alterations omitted)).

Further, there are no allegations at all with respect to President Stewart and Dr. Farmer in their individual capacities, other than the decision to terminate his employment after the August 22, 2024 events. *See Chacko*, 429 F.3d at 511 n.2 ("discrete acts of

---

[7] Again, Plaintiff admits that during his 18 years with SCC, he had a pristine personnel record and had no prior disciplinary actions. Also, Plaintiff fails to identify any alleged disparity with his pay as compared to any similarly situated employees.

18

discrimination, [such as] failure to promote and retaliatory demotion [,] … are clearly not allegations of a hostile work environment").  Accordingly, Plaintiff fails to allege facts that would give rise to a hostile work environment claim against President Stewart, Dr. Farmer, or SCC, and his Third and Fourth Causes of Action should be dismissed.

C.     **Plaintiff's Complaint Fails to State a Claim of Retaliation.**

The elements of a prima facie claim of retaliation under Title VII (and §1981 and §1983) are: "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman*, 626 F.3d at 190; *see also Mackey v. Shalala,* 360 F.3d 463, 469 (4th Cir. 2004).

Here, Plaintiff's Complaint fails to identify any protected activity by Plaintiff prior to him being caught in the President's office and on the President's computer and placed on administrative leave pending the investigation.  Even assuming that Plaintiff submitted an Inquiry Information form to the EEOC on August 28, 2024 (after being placed on administrative leave) and notified Defendants of the same, Plaintiff has failed to allege facts that would allow him to establish a causal link between the filing of his EEOC Inquiry Information form and SCC's decision to terminate him.  Given the undisputed events giving rise to Plaintiff's termination (as set forth in III.A. above, including his untruthful statements to Defendants during the investigation), Plaintiff has failed to articulate facts to show a causal link between the filing of his EEOC Inquiry Information form and the decision to terminate him.  Plaintiff cannot avoid termination (and the consequence of his misconduct) by submitting an inquiry to the EEOC after being placed on administrative leave so that Defendants could investigate his misconduct.  *See Pulley*

19

*v. KPMG Consulting, Inc.*, 348 F. Supp. 2d 388, 397 (D. Md. 2004), aff'd, 183 F. App'x 387 (4th Cir. 2006) ("The sword of an EEOC complaint cannot be used as a shield to protect an employee from the consequences of inappropriate behavior…."). Thus, Plaintiff's Second and Fifth Causes of Action for retaliation should be dismissed.

### D. Plaintiff's Complaint Fails to State a Claim for Supervisor Liability Under 42 U.S.C. § 1983.

"To establish supervisory liability under § 1983, a plaintiff must show:

(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

<u>Armstrong v. City of Greensboro</u>, 190 F. Supp. 3d 450, 466 (M.D.N.C. 2016) citing *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Here, Plaintiff alleges in a conclusory manner, without any specifics, that CFO Thomas, Provost Roush, Vice President Layne, Vice President Shoemake, and Dean Kauffman, engaged in disproportionate over-scrutiny, disrespect, over-disciplining, and under-paying of Black SCC employees. (Dkt No. 1, Compl. ¶ 289) Plaintiff's conclusory allegations of over-scrutiny and disrespect (and over-disciplining and under-paying of other Black SCC employees) fall short of posing "a pervasive and unreasonable risk" of constitutional injury to Plaintiff.[8] Additionally, Plaintiff makes no allegations

---

[8] None of these individuals are alleged to have supervised Plaintiff or made any decisions regarding his evaluations or discipline, and regardless, Plaintiff acknowledges that he had

20

that would show President Stewart or Dr. Farmer had "actual or constructive knowledge" of any such conduct. *See Id.*, Compl. ¶ 290. "[T]he absence of a pattern of factual, rather than conclusory, allegations, will fail to support the knowledge element." *Armstrong*, 190 F. Supp. 3d at 467. *See also, Greene v. Cnty of Durham Office of the Sheriff Dept.*, No. 1:14-CV-153, 2014 WL 5465371 at *2 (M.D.N.C. Oct. 28, 2014) ('allegations of pervasive misconduct" were "conclusory and insufficient to state a claim."). Consequently, Plaintiff's Seventh Cause of Action should be dismissed.

E. **Plaintiff's Complaint Fails to State a Claim for Negligent Infliction of Emotional Distress.**

In his Complaint, Plaintiff claims that President Stewart and Dr. Farmer engaged in intentional discrimination by terminating him, not any acts by them that would give rise to a claim for negligent infliction of emotional distress. *See* Dkt No. 1, Compl. ¶ 316. "[F]ederal courts interpreting North Carolina law note with near uniformity that acts of discrimination and harassment, because they are inherently intentional, cannot form the basis of an NIED claim; such claims simply allege no negligent conduct." *Redman v. Am. Airlines, Inc.*, No. 322CV00515RJCDCK, 2023 WL 4768696, at *3 (W.D.N.C. July 26, 2023); *see also Pledger v. UHS-Pruitt Corp.*, No. 5:12-CV-484-F, 2013 WL 1751373, at *10 (E.D.N.C. Apr. 23, 2013), *aff'd* 590 Fed. Appx. 274 (4th Cir. Jan. 26, 2015) (a claim for negligent infliction of emotional distress should not survive a motion to dismiss

---

a pristine personnel record and regularly received praise and accolades from his supervisors and superiors, with no warnings or disciplinary actions (from any of these individuals or otherwise). Plaintiff also fails to allege any facts that he experienced a pay disparity compared to any similarly situated employees.

if the claim is based on alleged discriminatory or retaliatory conduct, which is inherently intentional); *Barbier v. Durham Cty. Bd. of Educ.*, 225 F. Supp. 2d 617, 631 (M.D.N.C. 2002) (where "plaintiff's complaint alleges acts of discrimination that are intentional in nature, and simply concludes that the acts were committed negligently, it is insufficient to state a claim for negligent infliction of emotional distress"). As such, Plaintiff fails to state a NIED claim under North Carolina law.

## CONCLUSION

For all of the reasons set forth above, Plaintiff's Complaint should be dismissed in its entirety.

This the 5th day of January 2026.

                                /s/ Patti W. Ramseur
                                Patti W. Ramseur
                                NC State Bar No. 26817
                                pramseur@ramseurmaultsby.com
                                Tina L. Hlabse
                                NC State Bar No. 26493
                                thlabse@ramseurmaultsby.com
                                Alexander L. Maultsby
                                NC State Bar No. 18317
                                amaultsby@ramseurmaultsby.com
                                RAMSEUR MAULTSBY LLP
                                1150 N. Revolution Mill, Suite 3
                                Greensboro, NC  27405
                                (336) 897-0025

                                *Attorneys for Defendants*

## CERTIFICATE OF WORD COUNT

Pursuant to L.R. 7.3(d)(1), the undersigned certifies that this brief complies with the Court's word limit as calculated using the word count feature of the word processing software. Specifically, this Brief contains less than 6,250 words. This count includes the body of the brief, headings and footnotes, but does not include the caption, signature lines, this certificate or the certificate of service.

This the 5th day of January, 2025.

 /s/ Patti W. Ramseur
Patti W. Ramseur
NC State Bar No. 26817
pramseur@ramseurmaultsby.com
RAMSEUR MAULTSBY LLP
1150 N. Revolution Mill, Suite 3
Greensboro, NC  27405
(336) 897-0025

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, a copy of the foregoing Memorandum in Support of Defendants' Motion for Judgment on the Pleadings was filed electronically with the Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's Electronic Filing System to all parties indicated on the electronic filing receipt.

This the 5th day of January 2026.

       /s/ Patti W. Ramseur
Patti W. Ramseur
NC State Bar No. 26817
pramseur@ramseurmaultsby.com
RAMSEUR MAULTSBY LLP
1150 N. Revolution Mill, Suite 3
Greensboro, NC  27405
(336) 897-0025